Filed 10/9/13  Harmon v. Abdulzahra CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

STUART J. HARMON et al.,

     Plaintiffs, Cross-defendants and Respondents,

v.

HAZIM ABDULZAHRA,

     Defendant, Cross-complainant and Appellant.

E055089

(Super.Ct.No. TEC097457)

OPINION

APPEAL from the Superior Court of Riverside County.  Dallas Holmes, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Mario Alvarado for Defendant, Cross-complainant and Appellant.

Hales & Associates and Brent J. Hales for Plaintiffs, Cross-defendants and Respondents.

1

On July 24, 2009, Stuart Harmon dba Harmon Excavating (plaintiff) filed a complaint for breach of contract against Hazim Abdulzahra (defendant).[1] A court trial was held September 26 and 27, 2011.

The trial court decided that "plaintiff was in the process of performing the contract here at issue on May 21, 2009, when defendant called him off the job and ordered him to take his equipment and leave the site."

The trial court therefore found that defendant had breached the contract and awarded plaintiff damages of $25,455, costs of $3,253.15, and $30,000 in attorney fees. Defendant appeals.

### STANDARD OF REVIEW

We apply a substantial evidence standard of review to the trial court's factual determinations. Each party cites the rule as stated in *Bowers v. Bernards* (1984) 150 Cal.App.3d 870 (*Bowers*). In that case, the court defines substantial evidence as evidence of ponderable legal significance, reasonable in nature, credible, and of solid value. (*Id.* at p. 873.) The *Bowers* court stated: "[T]he existence of such 'substantial evidence' will be determined as follows: When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the

---

[1] The complaint is not in our record because defendant failed to ask that it be included in the record on appeal.

determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.* [Citations.]" (*Id*. at pp. 873-874.)

We apply the substantial evidence rule to the trial court's determination of the factual issues in this case.

FACTS

Defendant owned property adjacent to Highway 74 in Lake Elsinore. He planned to improve the vacant land by constructing a car wash and other buildings. In April 2009, defendant entered into a grading contract with plaintiff. The contract called for rough grading on the project for a price of $21,875. Payments were to be made in four installments at unspecified times. The contract specifically lists grading of 290 feet of keyway, 15 feet wide and two feet deep. Subsequently, defendant signed a change order for the keyway, which contained hourly and daily rates for equipment needed for three to five days of work.

The parties agree that the contract was breached. Plaintiff testified that, after a disagreement on May 21, 2009, defendant told him, "that's it, and . . . said get off my job or I'm going to call the police." Two witnesses also testified that they had heard plaintiff and defendant's conversation: a surveyor on the property and one of plaintiff's employees.

3

Defendant denied the conversation occurred and argued that plaintiff walked off the job after a dispute with the soil engineer technician, Berdge Jolakian (Jolakian). Jolakian testified that his job was to observe and test the work performed by plaintiff and to report any deficiencies he found to both the contractor (plaintiff) and the owner of the property (defendant). Jolakian further testified that once he informed plaintiff about the deficiencies he had found, "that's when things became ugly." Jolakian testified that on May 21, 2009, Jolakian gave a copy of his report to defendant. He then testified that defendant gave a copy of the report to plaintiff, and that's when plaintiff left the property. Jolakian testified that he did not remember hearing defendant and plaintiff talk about why plaintiff was leaving.

As noted *ante*, the trial court believed plaintiff's version of events and found in his favor.[2]

## BREACH OF CONTRACT

Defendant contends that plaintiff failed to follow contract guidelines and refused to complete the work, thereby breaching the contract before the alleged ejectment from the job. Despite his citation to the *Bowers*' substantial evidence rule, defendant argues that: "The Court specifically found that [defendant] breached the contract with [plaintiff]. The weight of evidence demonstrated no breach by [defendant]."

---

[2] The trial court's credibility determination was not surprising. For example, defendant testified that he had not had any discussion with plaintiff about the change order regarding the depth of the keyway. Defendant was then impeached with his deposition testimony. In that testimony, defendant described discussions with plaintiff about the keyway and the change order.

4

Defendant's first argument is that plaintiff failed to follow the plans and specifications, as approved by the county, and as agreed to by plaintiff. However, any such agreement is not stated in any of the three documents signed by defendant. The first document specifically provides for rough grading of 290 feet of a keyway, 15 feet wide and two feet deep. Plaintiff explained that it was standard practice to excavate to a two-foot depth for a keyway. Soil conditions generally required a deeper excavation, and further excavation requires a change order. Plaintiff testified that he explained this practice in detail to defendant before the first document was signed. After work began, he excavated two feet and then spent a week excavating approximately six additional feet on an hourly basis as stated in the change order. The total amount on the change order was $25,455.

Since the trial court found that defendant breached the contract by ordering plaintiff off the job, it cannot be determined whether plaintiff would have completed the contract in accordance with the plans and specifications. If the argument relates to the keyway, the evidence shows that plaintiff did the necessary work under the contract and the change order. Nevertheless, defendant failed to pay the amount due under the change order.

Although he signed the change order, defendant's complaint seems to be that he was charged extra for the work, i.e., that plaintiff agreed to do all the work in the plans, including all work on the keyway, for the contract price. The difficulty with this argument is that the contract specified the amount of keyway excavation (two feet deep), and it does not specify that the work includes all the grading in the plans. For example,

the contract specifies that it does not include fine grading. The grading plan does, however, require fine grading. Defendant claims that plaintiff should have done the fine grading called for in the grading plan. Plaintiff testified that he did the rough grading, not fine grading, as specified in the contract. Thus, the trial court could conclude that the contract provisions trumped the plan provisions, i.e., that plaintiff did not agree to do all the grading provided for in the plan.

In any event, the trial court could, and did, find that defendant breached the contract, and substantial evidence supports the trial court's conclusion. (Evid. Code, § 411.)

THE AGENCY ISSUE

Defendant contends that Jolakian was his agent and, accordingly, Jolakian's dispute with plaintiff was, under agency principles, a dispute between defendant and plaintiff. Defendant states in his brief, "[t]hus, the dispute between Jolakian and Abdulzahra [*sic*] could be used to find that Respondent [Harmon] breached the contract." While this may be true, if defendant is referring to a dispute between Jolakian and plaintiff, it doesn't affect the determination of who breached the contract. As the trial court stated: "Any dispute between plaintiff and Mr. Jolakian on the same day is irrelevant to defendant's breach."

Defendant contests this decision by arguing that it was a "major dispute" that resulted in "further acrimony" between plaintiff and defendant, as Jolakian's principal. Defendant contends that the court should have considered the Jolakian dispute but failed to do so.

6

There is no evidence to support the argument. The trial court apparently *did* consider the evidence but merely found it irrelevant. It was certainly entitled to do so because the central issue was whether defendant breached the contract by ordering plaintiff off the job. We agree with the trial court that the number of disputes or the amount of acrimony on the jobsite is essentially irrelevant to the question of who breached the contract.

AWARD OF ATTORNEY FEES

Defendant next argues that the trial court's subsequent attorney fee award of $30,000 was improper. He points out that the first two documents he signed, the contract and the conditions and exclusions page, do not provide for attorney fees. The attorney fee provision is contained in the third document, the change order.

Defendant argues that the trial court erred in considering the three documents to be part of one contract, and in applying the attorney fee provision to the entire contract.

The trial court could find that the change order was part of the contract because, as plaintiff testified, it was contemplated that there would be a change order after the final depth of the keyway was established by the soil engineer technician. Defendant testified that the change order related to another issue, the removal of a pipe and cable found during excavation, but the result is the same: the trial court could find that all three documents were part of the same contract for the same project. Defendant has not borne his burden of demonstrating error.

The change order was signed by defendant. Just under the signature, it states, "Should suit be commenced to collect this invoice or any portion thereof, such sum, as the court may deem reasonable, shall be added hereto as attorney fees."

Defendant argues that the attorney fee provision was not bargained for and the change order was merely an invoice "for work already contemplated and performed prior to the change order." He does not cite any authority to support his argument.

Plaintiff cites *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582 (*Amtower*). In that case, the court considered a cause of action based on an employment contract with an attorney fee provision in conjunction with tort causes of action. Although the contract clause of action was eventually dismissed, attorney fees were awarded because the contract cause of action was an attempt to enforce the contract. (*Id.* at p. 1603.) The *Amtower* court rejected the apportionment argument, citing the leading case of *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124: "[F]ees need not be apportioned 'when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.'" (*Amtower*, at pp. 1603-1604, quoting *Reynolds*, at pp. 129-130.)

The *Amtower* case goes on to hold: "Where fees are authorized for some causes of action in a complaint but not for others, allocation is a matter within the trial court's discretion. [Citation.] A trial court's exercise of discretion is abused only when its ruling "'"exceeds the bounds of reason, all of the circumstances before it being considered."'"' [Citation.]" (*Amtower*, *supra*, 158 Cal.App.4th at p. 1604.)

8

In the present case, the allegations of the complaint were apparently made in a single breach of contract cause of action.[3]  The trial court did not abuse its discretion in treating all documents as part of one contract and awarding attorney fees accordingly.

<u>DISPOSITION</u>

The judgment is affirmed.  Plaintiff to recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


<u>McKINSTER</u>
                      J.

We concur:


<u>RAMIREZ</u>
         P. J.


<u>KING</u>
         J.

---

[3]  See footnote 1, *ante*.